Taylor, Chief Justice.
 

 It is the duty of a guardian to possess himself of all the lands of which his ward is apparently seised; to receive the rents and profits, for which he is to account to his ward at full age; and generally to pursue all those means pointed out in the act of 1762, towards the execution of his trust. If a suit be brought against the guardian, for the lands of which the ancestor of the ward died seised, it is incumbent on the guardian to make a defence; for if the land is lost by his negligence, it would be a breach of duty in him for which he would be
 
 *489
 
 'responsible to bis ward. Should his defence be unsuccess» ful, and damages awarded against the ward, it would
 
 °
 
 be repugnant to every principle ol justice, that the guardian should be made personally liable; for who, ancor such a state of things, would become either a general guardian, or guardian
 
 ad litem.
 
 When the law imposes a duty or obligation on a man, it will protect him in the discharge of it, so long as he acts within the bounds of his duty. The guardian was compellable by law to defend the ejectment; he was compellable by law to enter upon the lands after the death of
 
 Mary Mumford,
 
 and receive the profits, not for his own use, but for the eventual benefit of his wards, if they had succeeded in the suit. Not one tortious act has been committed by the guardian, for it would be a contradiction in terms to call that so, which was done in indispensable obedience to the act of 1799, that if the heirs are minors after the death of their ancestor, against whom an ejectment had been instituted; the guardian must defend the suit. The tort supposed in the action of ejectment, is the original trespass or dispossession;
 
 that
 
 was committed by the ancestor in his lifetime, and the interference of the guardian was a rightful act, because exacted from him by law, and because, to all human appearance, it might result in benefit to the heirs. The simple statement satisfies me that the guardian is not liable, and goes very far to prove that the heirs are liable; as the law provides, that the only way in which a suit against an infant can be defended is by guardian; a recovery in such suit, is a recovery against the infant, and must be binding upon him; for if a suit had been brought by a guardian, or next friend, the recovery would have enured to the benefit of the infant. By intendment of law, the suit and recovery are against the infant, as appears by the form of pleading:
 
 “
 
 and the said C. B. by G. H. admitted by the said court here as guardian of the said C B. to defend for the said C. B. who is an infant under the age of 21 years, comes
 
 *490
 
 and defends the wrong and injury, when, &c.” (2
 
 Chitty
 
 409.) The infants then did really receive the rents and profits by the hands of their guardian, who would have been accoutltable to them had a contrary judgment been rendered; the guardian is the main instrument through which the infant’s interests are managed; he must be bound by the guardian’s acts generally, but emphatically by those acts which are done in obedience to the law. It would be singular that a judgment recovered against an infant by his guardian
 
 in
 
 lite, should not bind him, when the guardian may, of his own accord, do so many acts that will; he may submit the infant’s rights to arbitration, and the infant would be bound by the award.
 
 Roberts
 
 v.
 
 Naibold,
 
 (Comb. 318.) Upon the whole, I am quite satisfied that there ought to be a new trial, and the non-suit set aside.
 

 The rest of the Court concurring, the non-suit was set aside, and
 

 The judgment reversed.